# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>**161 RICHBRIAR STREET, MEMPHIS, TENNESSEE** | Case No. ___24-SW-270_____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jesse Browning, a duly deputized special federal officer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following: **the second-floor studio/bedroom located above the garage at 161 RICHBRIAR STREET, MEMPHIS, TENNESSEE** (hereafter the "**Target Premises**").

2. I am a commissioned Police Officer with the State of Tennessee and currently a Sergeant with the Multi-Agency Gang Unit (MGU) which is comprised of the Memphis Police Department (MPD), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Federal Bureau of Investigation (FBI) and Homeland Security Investigations (HSI). I joined the Memphis Police Department in October of 2009. In 2014, I was assigned to the Multi-Agency Gang Unit. In such time, I have participated in numerous narcotics and violent crimes related investigations on the local, state, and federal levels resulting in the successful identifications, investigations, arrests, and prosecutions of narcotics traffickers and violent criminals in the Memphis-metropolitan area.

1

Many of these investigations have involved multi-agency and jurisdictional cooperation from agencies such as the Federal Bureau of Investigations (FBI), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Drug Enforcement Administration (DEA), and various other state and local agencies in the tristate area.

3. I have also participated in multiple investigations involving the interception of oral, wire, and electronic communications while conducting Title III Wire Taps (TIII'S) on the federal level and also on the state level. I have completed (40) hours of Communications Intercept Certification School conducted by the Tennessee Bureau of Investigation (TBI) on December 16, 2016. I am certified through the Tennessee Bureau of Investigations (TBI) as an "investigative or law enforcement officer" as defined by Tenn. Code Ann. § 40-6-303, to make application for such interceptions.

4. Furthermore, I have completed numerous narcotic, cellular, and law enforcement related schools throughout my career, including the Basic Narcotic Investigator School for the Memphis Police Department Organized Crime Unit, 40 hours of Communications Intercept Certification School conducted by the Tennessee Bureau of Investigation (TBI), NW3C Cell Phone Mapping and Analysis Course, NW3C Social Media and Technical Skills, Pen link Advanced Analysis and Live Collection Training, Federal Bureau of Investigation (FBI) Cellular Analysis Survey Team (CAST) Basic Historical Cell Site Analysis Course, MSAB Intermediate Phone Forensic Training, PATCtech Smartphone Forensics and Cellular Technology Certification +SMART and numerous other schools.

5. I am duly deputized special federal officer by the United States Department of Justice and as such I am an investigative or law enforcement officer of the United States within

the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

## **PROBABLE CAUSE**

7. On June 10, 2024, Chief United States Magistrate Judge Tu M. Pham, for the Western District of Tennessee, authorized the arrest of Jehu CRUZ, a/k/a "Peso" and "Migo," (hereafter "CRUZ") for possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

8. On June 13, 2024, investigators went to **161 Richbriar Road, Memphis, Tennessee** (CRUZ's known residence) to execute the arrest warrant. At approximately 0600 hours, investigators knocked and announced their presence and advised all occupants of the arrest warrant for CRUZ.

9. Two persons responded to investigators' announcement and identified themselves as CRUZ's parent. CRUZ's parents allowed investigators inside the residence and advised that CRUZ was in his studio/bedroom located on the second floor above the garage (the **Target Premises**). Investigators proceeded to CRUZ's bedroom, where they located CRUZ and an adult female. As investigators took CRUZ into custody on the arrest warrant, they observed in plain view a clear bag filled with marijuana, a clear bag with one unknown blue pill, a clear bag with several long-shaped pills that resembled Xanax and a black handgun, which was sitting next to the narcotics on same dresser inside CRUZ's bedroom. Additionally, investigators observed in an open

3

dresser drawer a clear bag filled with rifle ammunition. Next to the clear bag of rifle rounds were several different caliber rifle magazines and pistol magazines. Furthermore, investigators observed in plain view an assault style rifle, which was inside an open closet sitting on a shelf partially covered with a black jacket.

10. I know from a recent prior investigation that on March 27, 2024, CRUZ was in possession of a loaded firearm, psilocybin mushrooms, and marijuana. That investigation is the basis for the arrest warrant investigators were there to serve on this date. In the March 27, 2024 investigation, officers with Barlett Police Department (BPD), Memphis Police Department (MPD), and Shelby County Sheriff's Office (SCCO) BRAT Team converged on a stolen Nissan Maxima and contained it by positioning vehicles in front and back of the Maxima. Upon doing so, the three individuals in the vehicle attempted to flee. The driver of stolen Maxima was CRUZ, who was taken into custody after a short foot pursuit. As officers attempted to apprehend CRUZ, a black .40 caliber Glock 22 (bearing serial number ALK373) and a Gray Apple I-Phone with a cracked screen fell from CRUZ's person as he ran. A search incident to arrest of CRUZ yielded a key fob programmed to operate the stolen Maxima and a gray ski mask. The Glock .40 caliber pistol had a live round in the chamber and a magazine containing approximately 15 live rounds.

11. In addition to the firearm that fell from Cruz's person officers also recovered from the stolen Maxima: a) a bag of green leafy substance, consistent with marijuana, from the center cup holder; b) a Diamondback Firearms DB15 AR pistol on the front passenger floorboard, which was affixed with a 100-round drum magazine containing approximately 90 rounds of live ammunition and a "drop in auto sear" (DIAS) that converted it into a fully automatic machine gun; c) a 9mm Springfield Armory XD elite pistol (determined to be stolen) on the front passenger floorboard, which had one live round in the chamber and a magazine containing approximately

4

nine live rounds; d) a 7.62 x 39 Galil Ace SAR rifle (also determined to be stolen) on the rear driver side floorboard, which had a magazine containing approximately 15 live rounds; and e) a black/white backpack in the rear passenger side seat, which contained two digital scales, a screwdriver, a large bag of green leafy substance (believed to be marijuana), a large bag of psilocybin mushrooms, and six round blue pills imprinted with the letter "M."

12. On May 2, 2024, investigators obtained a federal search warrant (24-SW-189), signed by United States Magistrate Judge Charmiane G. Claxton, authorizing the forensic search of CRUZ's Apple i-Phone. On May 9, 2024, the device extraction was conducted by an ATF Digital Forensic Examiner.

13. On May 29, 2024, Agents examined the forensic extraction, which contained multiple communications between CRUZ and others, via text messages and social media applications, wherein CRUZ discussed the distribution of narcotics, examples of these interactions are documented below:

   a. March 15, 2024 – CRUZ converses, via text message, with an individual identified by CRUZ as "Lil Avenue" stating, "I got qps 400 za."

   b. March 22, 2024 – CRUZ converses, via text message, with an unknown individual using telephone number (901) 273-5005 regarding the sale of "o's", or ounces, for $200. The individual asks CRUZ, "how much fa 2?", to which CRUZ responds: "340."

   c. March 25, 2024 – CRUZ messaged an individual, via Facebook, stating "I got some shrooms."

   d. March 25, 2024 – CRUZ sent a message, which depicted a video of an individual holding, what I believe to be, contraband mushrooms consistent with the substance

5

    seized on March 27, 2024.

  e. March 26, 2024 – CRUZ sent a message, which depicted a video of an individual holding, what I believe to be, contraband mushrooms consistent with the substance seized on March 27, 2024.

  f. March 27, 2024 – CRUZ sent a message, via Facebook, stating "You fw them shrooms?"

14. Based on the foregoing, investigators sought and received an arrest warrant for CRUZ charging him with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

15. Based on the plain view observations by investigators on June 13, 2024, there is probable cause to believe, and I do believe, that CRUZ is in unlawful possession of controlled substances, that evidence of his unlawful possession of controlled substances is in the **Target Premises**, that CRUZ is also in possession of firearms and that his possession of firearms are in furtherance of a drug trafficking crime, and that evidence of his unlawful possession of firearms is in the **Target Premises**. The proximity of the firearms and ammunition to the controlled substances and CRUZ's history of unlawfully distributing controlled substances while armed with a firearm further supports probable cause for the requested search warrant.

## **CONCLUSION**

16. During my tenure as a law enforcement officer, I have investigated and participated in numerous operations which involved, in part, drug trafficking violations, the flow of the illegal proceeds obtained from drug trafficking, and related offenses such as violations of firearms laws. My involvement in these investigations has resulted in the successful prosecution of numerous individuals and the forfeiture of assets purchased with the proceeds from unlawful drug trafficking,

as well as assets used to facilitate these violations. Search warrants relating to these investigations have covered vehicles, residences of drug traffickers and their co-conspirators, "stash houses" used as storage and distribution points for controlled substances, safe deposit boxes, and businesses and offices used by drug dealers as fronts to legitimize their unlawful drug trafficking.

17.     Materials searched for and recovered in these locations have included various controlled substances; drug paraphernalia; books and records reflecting drug sales, the transfer or transportation of drugs and amounts of monies owed for drugs, records reflecting the names, addresses, and telephone numbers of co-conspirators, sales receipts and other records reflecting the expenditure of monies that are proceeds from unlawful drug distribution; currency and money wrappers; records of bank transactions made to conceal and launder drug trafficking proceeds; wireless telephones, paging devices, computers and computer disks, answering machines; and various valuable assets such as real property and automobiles that were purchased with the proceeds of unlawful drug trafficking. These items obtained by search warrants, constituted evidence of drug violations, the acquisitions of assets with drug trafficking proceeds, and the use of the assets to facilitate drug trafficking violations.

18.     Based on my training, experience, and participation in this and other drug trafficking investigations, I also know that:

      a. drug traffickers must maintain and have quick access to large amounts of United States currency, foreign currency, or other liquid assets in order to maintain and finance their ongoing drug business;

      b. drug traffickers maintain in their residences computerized or written books, records, receipts, diaries, ledgers, calendars, personal telephone/address books, airline tickets, airline schedules and airline receipts, cashier's checks, money orders, telephones with memory capabilities, telephone answering machines and telephone answering tapes, and other papers relating to the transportation, ordering, sale and distribution, of controlled substances and the outstanding debts and collections from controlled substances that have been distributed;

c. drug traffickers commonly provide narcotics on consignment sale to their customers, who subsequently pay for the drugs after reselling the drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, et cetera, will be secured by the drug traffickers within their residences for their ready access to them for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

d. drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residences, for ready access and to conceal them from law enforcement agencies;

e. drug traffickers commonly maintain records reflecting names, nicknames, addresses, and telephone numbers of both their current and past drug associates;

f. drug traffickers who are aware of an ongoing criminal investigation will often destroy an existing format of records reflecting their drug transactions. However, it is common for drug traffickers, particularly traffickers who provide or receive drugs on a consignment basis, to create another type of drug record to assist the trafficker in the collection of drug debts;

g. drug traffickers commonly use their homes to store records and/or receipts reflecting the collection of drug debts and the distribution of controlled substances, as well as records and receipts reflecting the expenditure of drug proceeds for personal and business assets;

h. drug traffickers will commonly conceal within their residences or within the curtilage of their residences, quantities of narcotics, large amounts of currency, firearms, financial instruments, jewelry, electronic equipment and other items of value and proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, and spending large sums of money derived from drug trafficking;

i. drug traffickers will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services such as safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate and business fronts;

j. persons involved in drug trafficking who are aware of a criminal investigation into their financial drug activities, will conceal, liquidate, and transfer easily movable drug derived assets in order to prevent law enforcement agencies from seizing and forfeiting their assets;

8

    k. drug traffickers often have photographs, slides, or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug trafficker's possession or residence;

    l. based on my training and experience, drug traffickers commonly have firearms, ammunition, and other weapons in their possession, in their cars, on their person, at their residence including, but not limited to handguns, rifles, shotguns, automatic weapons, knives, ammunition, and magazines. These firearms and weapons are most often kept to protect and secure drug traffickers' property;

    m. based on my training, experience and participation in this and other drug trafficking investigations, I know that it is generally a common practice for drug traffickers to store their drug inventory and drug related paraphernalia in their residences, cars, or those of trusted associates. This paraphernalia frequently includes scales, funnels, sifters, grinders, plastic bags, heat sealing devices, and dilutant;

    n. based on my training and experience, drug dealers often create secret locations, commonly called "traps" or "hides" in their automobiles and residences. Often, drug dealers will use these traps or hides to conceal and store narcotics, weapons, money and other items and documents related to their drug trade; and

    o. based on my training, experience and participation in this and other drug trafficking investigations, I know that drug traffickers often possess, maintain and control other items related to their drug trafficking activities, as described in Attachment A to this affidavit, in their cars, homes, garages and out-buildings.

19. On the basis of the foregoing information, there is probable cause to believe, and I do believe, that fruits, instrumentalities, and evidence of these crimes, namely the unlawful possession of controlled substances, in violation of Title 21, United States Code, Section 844(a), the unlawful possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a), and the possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), will be found at the **Target Premises**.

9

20. I submit that this affidavit supports probable cause for a warrant to search the **Target Premise** described herein and seize the items described in Attachment B.

Respectfully submitted,

*jesse browning*
_____
Jesse Browning
Special Federal Officer
Sergeant, Memphis Police Department

Pursuant to Federal Rule of Criminal Procedure 41(d)(3), the undersigned judicial officer has on this date considered information communicated by [X] telephone or [ ] other reliable electronic means or [X] both, in reviewing and deciding whether to issue a search warrant. In doing so, this judicial officer has placed the affiant under oath and has confirmed by speaking personally with the affiant on the telephone [X] that the signatures on the search warrant application and affidavit are those of the affiant or [ ] that the affiant has authorized the placement of the affiant's signatures on the application and affidavit, the documents received by the judicial officer are a correct and complete copy of the documents submitted by the affiant, and the information contained in the search warrant application and affidavit are true and correct to the best of the affiant's knowledge.

Subscribed and sworn to before me on June __13__, 2024.

_____
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE